KOHN BROTHERS ET AL. v. CLEMENT, MORTON & CO. ET AL.

CLEMENT, MORTON & CO. v. WAYNICK & CO. ET AL.

1. **Mortgage:** TO DELAY CREDITORS: WHEN NOT FRAUDULENT. Where an insolvent debtor executes a mortgage to *bona fide* creditors, with the design of hindering and delaying other creditors in the enforcement of their claims, and the evidence does not show that the mortgagees had any intention or purpose of aiding in the fraudulent plans of the mortgagor, for hindering and delaying other creditors, except so far as was necessary to secure their own protection, it is a case of a race between creditors, and such mortgage will not be fraudulent and void.

2. ———: ———: ———: ASSIGNMENT. Whether a mortgage, by an insolvent debtor of all his property to certain creditors, should be considered an assignment, and void because not made for the benefit of all, depends upon the intent with which it is made. An assignor intends to divest himself absolutely of the title and the control of the property, and where it appears that the mortgagor intended to retain control of the property, and made the conveyance for his own protection, it will be considered a mortgage.

*Appeal from Adams Circuit Court.*

FRIDAY, JUNE 9.

THESE causes are submitted together as arising substantially upon the same state of facts, and involving the same questions of law. The first is an action upon an indemnifying bond, and the second is a proceeding in garnishment. Both arise out of an attempt of Clement, Morton & Co. to collect a claim against A. G. Waynick & Co. There was a trial without a jury and judgment was rendered for Clement, Morton & Co. in both actions. H. A. Kohn Bros. et al., A. G. Waynick & Co. and W. O. Mitchell, garnishee, appeal.

*Stuart Brothers* and *W. O. Mitchell*, for appellants.

*Davis, Wells & Russell*, for appellees.

ADAMS, J.—The sole question in the case pertains to a certain chattel mortgage executed by A. G. Waynick & Co. to

1. MORTGAGE: to delay creditors: when not fraudulent.

H. A. Kohn Bros. et al. Clement, Morton & Co. claimed that it was invalid as executed with intent to hinder, delay and defraud them as creditors of A. G. Waynick & Co. and the court so held. The appellants claim that there was no evidence whatever of such intent, and that the judgment is wholly without support. In January, 1879, A. G. Waynick & Co. were doing business as merchants at Corning, and were indebted to a large number of persons from whom they had purchased goods. Their assets consisted of their stock in trade. Among their creditors were Clement, Morton & Co., and the plaintiffs in the first action, H. A. Kohn Bros. et al. While so indebted they executed a mortgage to H. A. Kohn Bros. et al. to secure the several amounts owed to them respectively and made no provision for the security of Clement, Morton & Co. The latter obtained judgment, and levied upon a portion of the goods, and also garnished W. O. Mitchell who had in his hands the proceeds of a portion of the goods realized upon the foreclosure of the mortgage. The bond in suit in the first action was given to indemnify the sheriff in making the levy.

It is undisputed that a debtor may if he sees fit prefer creditors, and a mortgage executed by him to one or more of his creditors, and having the effect to hinder and delay the unsecured creditors is not necessarily fraudulent.

It would be so only when executed with a fraudulent intent on the part of the mortgagor and when such intent is participated in by the mortgagee. The evidence in this case establishes, we think, an intent on the part of A. G. Waynick & Co., to hinder and delay Clement, Morton & Co. There are several circumstances which we think show quite clearly such in-

tent.   At the time the mortgage was executed Clement, Morton & Co., were about to obtain judgment and execution.   The debtors employed an attorney not to defend in the action, for they did not claim to have a defense, but to enable them to get time.   The attorney communicated with all of the other creditors and obtained the claims of most of them with authority to have them secured by mortgage, and a mortgage, being the mortgage in question, was executed and recorded with great promptness, and before Clement, Morton & Co., could possibly put their claim in judgment and get execution thereon. A. G. Waynick one of the mortgagors testifies that his object was, to protect himself and be allowed to go ahead and handle the goods.   What, precisely, Mitchell communicated to the other creditors does not appear.   Their testimony was taken and an effort made to draw out Mitchell's letters but without success.   We may assume, however, that they were notified in substance that some exigency had arisen by reason of which it had become important that they should become secured. We may assume also, that they knew or should have inferred that Mitchell was employed by A. G. Waynick & Co., who in causing them to be notified and requested to forward their claims, desired to promote some interest of their own.   We have a case then where an insolvent debtor offers and executes a mortgage to certain creditors, for his own protection, and with the design of hindering and delaying other creditors who were about to obtain judgment and execution, and the creditors thus preferred and made mortgagees had knowledge of the design, or had knowledge of the facts, from which they should have inferred it.   Now ordinarily where a vendor makes a sale with a fraudulent intent, and the vendee has knowledge of the fraudulent intent, or of facts which put him upon inquiry, the sale will be deemed fraudulent as to him. There is one exception, and that is where the sale is made in payment of a debt due the purchaser.   Such purchaser differs from an ordinary purchaser in that he is not deemed a volunteer.   Not being such, his knowledge of the vendor's fraudu-

lent intent does not make him a party to it.    *Brown v. Smith*, 7 B. Mon., 361.

The same rule applies in case of a mortgage.    This was held in *Chase v. Walters*, 28 Iowa, 469; Cole, J., said: "Where two or more *bona fide* creditors are engaged in a race for priority, the one securing it cannot have his right defeated and be postponed to a more tardy or less fortunate one, by showing the fraudulent motive, and the knowledge of it by the creditor, which prompted the debtor to give such priority." See also *York etc. Bank v. Carter*, 38 Penn. St., 446; *Funk v. Stotts*, 24 Ill., 632.    There might of course be a bona fide purpose on the part of the mortgagee to protect himself, and also a purpose to aid the fraudulent plans of the mortgagor. In such case the mortgagee would doubtless be deemed a party to the fraud.    But the purpose to aid the fraudulent plans of the mortgagor cannot be inferred from the mere fact that the mortgage necessarily has such effect.    In *Davenport v. Cummings*, 15 Iowa, 225, Wright, J., said: "It is the intention to do that which is illegal that makes the conveyance fraudulent, and not simply the doing an act which, without the wrong intent, may result in the same thing."    In our opinion the judgment of the court below cannot be sustained unless there is some evidence that the mortgagees had a purpose to aid the fraudulent plans of the mortgagors in addition to their purpose to protect themselves, and we have to say that we have deen unable to discover such evidence.    So far as we can see there is no ground for thinking that the mortgagees had the slightest desire to throw any obstacle in the appellees' way, except so far as it was necessary for them to do so to secure their own protection.    It is a case of a race between the creditors.    The appellees sought to protect themselves by obtaining judgment and execution, and the mortgagees, sought to protect themselves by obtaining a mortgage, and the latter simply claim the advantage of their priority.

Another objection made to the mortgage remains to be considered.    It is said that it is void because it was in effect

2. ——: ——; a general assignment, and not being for the benefit of all creditors is void. The appellees rely upon

_—— : assignment._

section 2115 of the Code which is in these words: "No general assignment of property by an insolvent or in contemplation of insolvency, for the benefit of creditors, shall be valid unless it be made for the benefit of all his creditors in proportion to the amount of their respective claims." The question presented is, as to whether the mortgage in question can be held to have been intended as a general assignment. In our opinion it cannot. The word "assignment" as used in the statute has a technical meaning and must be so construed. For an exposition of its meaning, see the learned opinion of Mr. Justice Cole in _Lampson & Powers v. Arnold_, 19 Iowa, 479. It is not necessary it is true that an instrument be denominated an assignment to justify a court in holding that it was intended as an assignment. It may be held to be such where it is denominated a mortgage. Several mortgages taken together may be held to constitute an assignment. _Burrows v. Lehndorff_, 8 Iowa, 96. Two or more mortgages and another instrument executed formally for an assignment, may be taken together as constituting an assignment. _Van Patten & Marks v. Burr_, 55 Iowa, 224. But a mortgage though executed by an insolvent person and covering all his property is not necessarily an assignment. _Fromme v. Jones_, 13 Iowa, 480; _Farwell & Co. v. Howard & Co._, 26 Id., 384. It depends upon the intent. An assignor intends to divest himself not only of the title to his property, but the control. An assignment is made in view of insolvency. It is the initiation of proceedings for the absolute disposition of the property and distribution of the proceeds. The purpose of a mortgage, if it is what it purports to be, is something quite different. We see nothing in the case at bar to indicate that the mortgagors intended anything but the giving of security. There is much indeed which would be entirely inconsistent with any other idea. We think the court erred in holding the mortgage fraudulent and void, and the judgment must be

Reversed.